# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER THOMPSON, | NO. EDCV 09-1182 AGR |
| Plaintiff, | |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Christopher Thompson filed this action on July 1, 2009.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on July 23 and 31, 2009.  (Dkt. Nos. 8 & 10.)  On January 5, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.

## PROCEDURAL BACKGROUND

On September 3, 2004, Thompson filed an application for Supplemental Security Income benefits alleging a disability onset date of June 16, 2004. Administrative Record ("AR") 18, 232-33.  The application was denied initially and upon reconsideration.  AR 18, 153, 160.  An Administrative Law Judge ("ALJ") conducted a hearing on January 24, 2007, at which Thompson and a vocational expert ("VE") testified.  AR 70-89.  On March 1, 2007, the ALJ issued a decision denying benefits.  AR 18, 131-41.  On July 23, 2007, the Appeals Council granted Thompson's request for review, vacated the decision of the ALJ, and remanded. AR 190-92.  On April 8, 2008, a different ALJ conducted a hearing at which Thompson and a VE testified.  AR 90-113.  On December 31, 2008, the ALJ issued a decision denying benefits.  AR 15-34.  The Appeals Council denied Thompson's request for review on May 19, 2009.  AR 7-9.  This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the

2

1  evidence is susceptible to more than one rational interpretation, the Court must
2  defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

3                                    **III.**

4                               **DISCUSSION**

5      **A.   Disability**

6      A person qualifies as disabled, and thereby eligible for such benefits, "only
7  if his physical or mental impairment or impairments are of such severity that he is
8  not only unable to do his previous work but cannot, considering his age,
9  education, and work experience, engage in any other kind of substantial gainful
10 work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20,
11 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

12     **B.   The ALJ's Findings**

13     Thompson has the following severe combination of impairments:
14 "adhesive capsulitis of the left shoulder, degenerative joint disease of the lumbar
15 spine . . . and substance abuse disorder."[1]  AR 22.  Thompson does not have an
16 impairment or combination of impairments that meets or medically equals one of
17 the listed impairments.  *Id.*

18     Thompson has the residual functional capacity ("RFC") to perform light
19 work limited to "simple, routine, repetitive tasks."  AR 23.  Thompson has no past
20 relevant work.  AR 32.  Jobs involving unskilled light work exist in significant
21 numbers in the national economy that Thompson can perform.  AR 33-34.

22     **C.   Compliance with the Appeals Council's Remand Order**

23     Thompson argues that the ALJ failed to comply with the terms of the

24

25     [1]  The heading of Section 2 of the ALJ's decision lists "schizophrenia" as
26 one of Thompson's severe impairments.  AR 22.  This appears to be a scrivener's
   error, however, because the ALJ explicitly rejected the contention that
27 Thompson's mental impairments are severe in the text immediately below that
   heading:  "The claimant's medically determinable mental impairments do not
28 cause more than minimal limitation in the claimant's ability to perform basic
   mental work activities and [are] therefore nonsevere."  *Id.*

                                    3

1   Appeals Council's July 23, 2007 remand order to obtain, if available, treatment

2   records from Dr. Tong, who opined in September 2006 that Thompson was

3   completely disabled due to schizophrenia. JS 3 (citing AR 191-92, 360).

4   According to Thompson, the ALJ's rejection of Dr. Tong's opinion, in part on the

5   ground that Thompson had not produced his treatment records, was an improper

6   attempt "to shift the burden of developing the record" because pursuant to the

7   Appeals Council's order, the ALJ, not Thompson, was required to obtain those

8   records. JS 4; AR 32.

9       Thompson's argument that the ALJ failed to comply with the Appeals

10  Council's remand order is misdirected. After the Appeals Council remanded the

11  matter (AR 191-92), the ALJ issued a new hearing decision in December 2008.

12  AR 18-34. The Appeals Council denied Thompson's request for review of that

13  decision.[2] AR 7-9. The ALJ's decision became the final decision of the

14  Commissioner subject to judicial review. *See* 42 U.S.C. § 405(g); *Tyler,* 305 Fed.

15  Appx. at 332 ("The district court properly declined to evaluate whether the ALJ's

16  second decision satisfied the demands of the Appeals Council's remand . . . .

17  [F]ederal courts only have jurisdiction to review the final decisions of

18  administrative agencies. When the Appeals Council denied review of the ALJ's

19  second decision, it made that decision final, and declined to find that the ALJ had

20  not complied with its remand instructions.") Accordingly, the Court's role is to

21  determine whether the ALJ's final decision is supported by substantial evidence

22  (*see Moncada*, 60 F.3d at 523), not whether the ALJ complied with the Appeals

23  Council's remand order.

24

25

26       [2]  By denying review of the ALJ's December 31, 2008 decision, the Appeals
Council  declined to find that the ALJ had not complied with its remand order and
27  determined that the additional evidence obtained by the ALJ was sufficient to
support the disability determination.  *Tyler v. Astrue,* 305 Fed. Appx. 331, 332
28  (9th Cir. 2008).

1    Construing Thompson's argument as a claim that the ALJ failed to develop

2    the record, the claim still fails.  In its remand order, the Appeals Council directed

3    the ALJ to obtain additional evidence concerning Thompson's medical claims,

4    including, "if available, Dr. Tong's treatment notes, treatment notes from the

5    sources listed in B83, and a consultative psychiatric examination with medical

6    source statements about what the claimant can still do despite the impairment."

7    AR 191-92.

8    Pursuant to the remand order, on June 6, 2008, the ALJ obtained

9    Thompson's medical records from Kern Medical Center, which included the

10   County of Kern Family Medicine Center where Dr. Tong practiced.  AR 360, 398-

11   624.  The records forwarded by Kern Medical Center did not include treatment

12   notes from Dr. Tong.  The ALJ gave "little weight" to Dr. Tong's opinion because

13   "[t]here is little indication that Dr. Tong is a psychiatrist" and because Thompson

14   "has not submitted treatment records from Dr. Tong to support this diagnosis."

15   AR 32.  Contrary to Thompson's argument that the ALJ improperly attempted to

16   "shift the burden" of developing the record, the ALJ requested and received

17   hundreds of pages of medical records from the medical center where Dr. Tong

18   practiced.  There is no evidence that treatment notes from Dr. Tong exist.  At the

19   hearing, Thompson did not indicate Dr. Tong had any treatment notes, much less

20   bring them to the ALJ's attention, or object to the absence of Dr. Tong's treatment

21   notes from the record.  AR 92-112.  Nor did Thompson supplement the record

22   with Dr. Tong's treatment notes following the hearing, even though the ALJ

23   agreed to hold the record open for thirty days so that Thompson could obtain

24   additional medical evidence.  AR 112.  The ALJ's determination that Dr. Tong's

25   two-sentence opinion merited "little weight" is supported by substantial evidence.

26   AR 32, 360; *see, e.g., Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (an

27   "ALJ need not accept the opinion of any physician, including a treating physician,

28

1  if that opinion is brief, conclusory, and inadequately supported by clinical
2  findings").

3          The ALJ made no finding that the evidence was ambiguous or that the
4  record was inadequate to allow for proper evaluation.  *See Mayes v. Massanari*,
5  276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further
6  is triggered only when there is ambiguous evidence or when the record is
7  inadequate to allow for proper evaluation of the evidence.").  In addition to
8  obtaining additional medical records, the ALJ also obtained a psychiatric
9  consultative examination by psychiatrist Dr. Linda Smith.  AR 375-87.  The ALJ
10  did not err.

11          **D.     Severity of Thompson's Mental Impairment**[3]

12          Thompson argues the ALJ improperly determined at step two that his
13  mental impairment did not meet the criteria to be classified as "severe."  JS 14.

14          At step two of the sequential analysis, the claimant bears the burden of
15  demonstrating a severe, medically determinable impairment that meets the
16  duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S.
17  137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  To satisfy the duration
18  requirement, the severe impairment must have lasted or be expected to last for a
19  continuous period of not less than 12 months.  *Id.* at 140.

20                  Your impairment must result from anatomical, physiological,
21                  or psychological abnormalities which can be shown by
22                  medically acceptable clinical and laboratory diagnostic
23                  techniques.  A physical or mental impairment must be
24                  established by medical evidence consisting of signs,
25                  symptoms, and laboratory findings, not only by your
26                  statement of symptoms.

27
28          [3]  The Court will address the remainder of Thompson's arguments in an
order different than that presented in the JS.

6

1   20 C.F.R. § 404.1508; 20 C.F.R. § 416.908.  "[T]he impairment must be one that

2   'significantly limits your physical or mental ability to do basic work activities.'"[4]

3   *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen v.*

4   *Chater*, 80 F.3d at 1273, 1290 (9th Cir. 1996) ("[A]n impairment is not severe if it

5   does not significantly limit [the claimant's] physical ability to do basic work

6   activities.") (citation and quotation marks omitted).

7         "An impairment or combination of impairments may be found 'not severe

8   *only if* the evidence establishes a slight abnormality that has no more than a

9   minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d

10  683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted).  Step two is "a

11  *de minimis* screening device [used] to dispose of groundless claims" and the

12  ALJ's finding must be "clearly established by medical evidence."  *Id.* at 687

13  (citations and quotations omitted).  "[T]he ALJ must consider the combined effect

14  of all of the claimant's impairments on her ability to function, without regard to

15  whether each alone was sufficiently severe."  *Smolen*, 80 F.3d at 1290.  The ALJ

16  is also "required to consider the claimant's subjective symptoms, such as pain or

17  fatigue, in determining severity."  *Id.*  The Commissioner does not consider age,

18  education, and work experience.  20 C.F.R. § 404.1520(c).

19        At step two, the ALJ did not find that Thompson had a severe mental

20

21

22        _____

23        [4] Basic work activities are the "abilities and aptitudes necessary to do most
      jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing,
      pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and
24    speaking; (3) understanding, carrying out, and remembering simple instructions;
      (4) the use of judgment; (5) responding appropriately to supervision, co-workers,
25    and usual work situations; and (6) dealing with changes in a routine work setting.
      20 C.F.R. § 416.921(b); Social Security Ruling ("SSR") 85-15.  Social security
26    rulings do not have the force of law.  Nevertheless, they "constitute Social
      Security Administration interpretations of the statute it administers and of its own
27    regulations" and are given deference "unless they are plainly erroneous or
      inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457
28    (9th Cir. 1989).

1   impairment.[5]  AR 22; *see supra* n.1.  Even assuming without deciding that

2   omission of a mental impairment constituted legal error at step two, such error

3   was harmless.  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Any

4   prejudice to Thompson could occur only at step five because all other steps were

5   decided in his favor.  *Id.*  The RFC assessment takes into account limitations

6   imposed by all impairments, even those that are not severe.  *Id.* at 683.

7           **E.    Consultative Psychiatric Examiner's Opinion**

8           The ALJ limited Thompson to "simple, routine, repetitive tasks."  AR 23.

9   Thompson argues the ALJ improperly rejected the opinion of examining

10  psychiatrist Dr. Kalman regarding his mental RFC.[6]  JS 9.  Thompson contends

11  the ALJ's reasons for giving greater weight to the opinion of Dr. Smith, who

12  examined him at the request of the state agency, than to the opinion of Dr.

13  Kalman, who examined him at the request of his lawyer, were legally insufficient.

14  *Id.* (citing AR 27-29 & 32).

15          An ALJ may reject an uncontradicted examining physician's medical

16  opinion based on "clear and convincing reasons."  *Carmickle v. Comm'r, Soc.*

17  *Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-

18  31).  When an examining physician's opinion is contradicted, "it may be rejected

19

20          [5]  In evaluating the severity of Thompson's mental impairments, the ALJ
21  considered the four broad functional areas set out in 20 C.F.R. § 404.1520a(c)(3)
    and section 12.00C of the Listing of Impairments:  activities of daily living; social
22  functioning; concentration, persistence or pace; and episodes of
    decompensation.  AR 22.  The ALJ found that Thompson had a mild limitation in
23  his ability to perform activities of daily living; no limitation in social functioning;
    mild limitation in the area of concentration, persistence or pace; and no episodes
24  of decompensation of extended duration.  *Id.*  The ALJ therefore concluded that
    Thompson's mental impairments were not severe.  *Id.* (citing 20 C.F.R. §
25  404.1520a(d)(1) ("If we rate the degree of your limitation in the first three
    functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally
26  conclude that your impairment(s) is not severe . . . .")).

27          [6]  Although Thompson refers in passing to "Dr. Kalman's relevant treating
    source opinion," the record establishes that Dr. Kalman was not Thompson's
28  treating psychiatrist, but rather examined Thompson at the request of
    Thompson's lawyer.  AR 28, 389-97.

1  for 'specific and legitimate reasons that are supported by substantial evidence in

2  the record.'"  *Id.* at 1164 (citation omitted).  An examining physician's opinion

3  constitutes substantial evidence when it is based on independent clinical findings.

4  *Id.*

5      "When there is conflicting medical evidence, the Secretary must determine

6  credibility and resolve the conflict."  *Thomas*, 278 F.3d at 956-57 (citation and

7  quotation marks omitted). "The ALJ is likewise responsible for resolving

8  ambiguities."  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The

9  Court must uphold the ALJ's decision when the evidence is susceptible to more

10 than one rational interpretation.  *Id.*

11      In a psychiatric evaluation dated March 30, 2008, Dr. Kalman did not make

12 a diagnosis.  He stated rule out schizoaffective disorder and rule out alcohol

13 abuse. AR 391.  Dr. Kalman reported that Thompson's responses were delayed,

14 his memory was impaired, he had impaired attention and concentration, his mood

15 was depressed, his affect was blunted, and his thought processes were

16 "significant for poverty of ideas" and marked by vague, halting speech.  AR 390-

17 91.  Thompson reported to Dr. Kalman that he does not get along with his family

18 and has no friends.  AR 391.  On a typical day, "I'm tore up.  I can't buy nothing.  I

19 can't eat well.  No money.  I'm very depressed."  *Id.*  For the last two years, he

20 had auditory hallucinations telling him to kill himself.  *Id.*

21      Dr. Kalman found that Thompson had mild limitations in his ability to

22 remember locations and work-like procedures; understand, remember and carry

23 out short and simple (one- or two-step) repetitive instructions or tasks; perform

24 activities within a schedule, maintain regular attendance and be punctual; interact

25 appropriately with the public; get along with co-workers; and maintain socially

26 appropriate behavior.  AR 394-96.  Thompson had moderate limitations in his

27 ability to understand, remember and carry out detailed instructions; maintain

28 attention and concentration for extended periods; sustain an ordinary routine

1    without supervision; make simple work-related decisions; complete a normal

2    workday and workweek without interruptions from psychologically based

3    symptoms; perform at a consistent pace without an unreasonable number of rest

4    periods; and accept instructions and respond appropriately to criticism from

5    supervisors.  AR 395-96.  Thompson's condition was not expected to improve

6    significantly in the next twelve months.  AR 392, 397.

7         Dr. Smith, an examining physician, saw Thompson on October 2, 2007,

8    and diagnosed alcohol abuse, possibly abstaining.  AR 382.  Dr. Smith found no

9    evidence of any other Axis I disorder and did not believe Thompson was impaired

10   in his ability to work "if he gave fair effort."  *Id.*  With respect to auditory

11   hallucinations, Dr. Smith found that Thompson was unable to provide any details

12   about what he hears.  AR 377.  She then fabricated details that are not typical for

13   true hallucinations, and he responded positively.  AR 377, 380.  Dr. Smith opined

14   that "the pattern is very typical for lay persons who are attempting to stage

15   psychosis."  AR 382.  As to symptoms on Thompson's questionnaire, such as

16   suicidal thoughts or anxiety, Thompson stated that the symptoms were resolved

17   with medication. AR 376, 382.  Thompson's thought processes were coherent

18   and organized.  AR 380.

19        Dr. Smith determined that Thompson was not impaired in his ability to:

20   understand, remember or complete simple commands; understand, remember or

21   complete complex commands; interact appropriately with supervisors, co-workers

22   or the public; comply with job rules such as safety and attendance; respond to

23   changes in the normal workplace setting; and maintain persistence and pace in a

24   normal workplace setting.  AR 383.

25         After a lengthy discussion of the medical evidence pertaining to

26   Thompson's mental limitations (AR 26-32), including the findings of Dr. Kalman

27   and Dr. Smith, the ALJ concluded:

28         The undersigned gives greater weight to the opinion of Dr. Smith

1   than to the opinion of Dr. Kalman.  She asked the claimant much

2   more detailed questions about his symptoms than Dr. Kalman did.

3   Given the claimant's lack of mental health treatment, Dr. Smith's

4   observations of the claimant's reluctance to answer question[s], Dr.

5   Smith's observations of fabricated details and near misses in

6   arithmetic calculations, and Dr. Kalman's opinion that the claimant's

7   limitations may be due to a diagnosis of alcohol abuse, the

8   undersigned finds that the claimant has not established the existence

9   of a severe mental impairment.

10  AR 32.

11       Dr. Smith and Dr. Kalman were examining psychiatrists whose respective

12  opinions were based on independent clinical findings arising from in-person

13  examinations of Thompson.  AR 375-97.  As such, both opinions constitute

14  "substantial evidence."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

15  2001) (examining doctor's opinion constitutes substantial evidence when it rests

16  on his own independent examination of the claimant).

17       Although Thompson argues the ALJ's reasons for giving greater weight to

18  Dr. Smith were not "legally sufficient," Thompson does not address any of the

19  ALJ's reasons.  JS 9.

20       As the ALJ explained, Dr. Smith's examination included questions that

21  were much more detailed than Dr. Kalman's, particularly regarding Thompson's

22  complaints of auditory and visual hallucinations.  AR 32.   Dr. Smith asked

23  Thompson to describe his auditory hallucinations and followed up with specific

24  questions about whether the voices came from inside or outside his head,

25  whether the voices woke him up, and whether they were accompanied by

26  feelings of dizziness.  AR 377.  Dr. Smith also asked Thompson to describe his

27  visual hallucinations.  *Id*.  Dr. Smith found that Thompson's responses were

28  "typical for lay persons who are attempting to stage psychosis."  AR 382; *see* AR

377.  In contrast, Dr. Kalman's report accepts Thompson's stated hallucinations at face value and provides no indication that Dr. Kalman asked probing questions.  AR 389, 391.

The ALJ's determination that the treating records were "consistent with Dr. Smith's report that the claimant could not tell her what the voices said" is supported by substantial evidence.  AR 31.  Thompson sought treatment at Kern Medical Center Emergency Department approximately fifty times between July 2005 and September 2007.  AR 24, 398-624. On July 14, 2007, a physician evaluation/assessment form noted that Thompson "reports feeling 'super depressed' but affect not congruent."  AR 478.  A psychiatric history completed on the same day notes: "[Patient] came in for abdominal pain.  Then reports he hears voices telling him to kill himself.  [Patient] states he needs something to eat, he is homeless and is trying to get SSI and has been denied a couple of times. [Patient] kept requesting food instead of answering questions. [History] of poly sub[stance] abuse (currently denies), malingering, depression."  AR 476. Four days later, Thompson reported a history of occasional auditory hallucinations, but said he was "unsure of what voices tell him.  'It just whistle[s], I am unsure of what the voices say.'"  AR 469.  Another record states that despite a reported history of schizophrenia, diagnosis of Thompson's mental state is tentative due to the need to rule out malingering.[7]  AR 481.

The ALJ also properly relied on the inconsistency between Thompson's near misses on arithmetic calculations before Dr. Smith and Dr. Kalman.  When Dr. Smith asked Thompson to subtract ten minus three, his answer was six.  Dr. Smith found that this "was not a credible answer."  AR 381.  By contrast, as the ALJ noted, Thompson was able to calculate that "he would receive 80 cents

---

[7]  As the ALJ noted, Dr. Sophon, an examining orthopedic surgeon, observed that Thompson "is noted not to use full effort in performing the right grip strength test," the results of which indicated that Thompson had zero strength in his right (dominant) hand, despite no evidence of atrophy.  AR 31, 362.

1  change from $1.00 if he bought two oranges at 10 cents each" when asked to do
2  calculations by Dr. Kalman.  AR 31, 390.  The ALJ concluded that Thompson's
3  answers showed "variability of effort, supporting Dr. Smith's opinion that the
4  claimant made mistakes typical for someone trying to stage a poor memory."  AR
5  31, 381.

6  The ALJ gave specific and legitimate reasons, supported by substantial
7  evidence, for giving greater weight to Dr. Smith's opinion.  The ALJ did not err.

8  **F.    Incomplete Hypothetical**

9  Thompson argues the ALJ's hypothetical was incomplete because it failed
10  to reflect all of his limitations, particularly his "multiple mental limitations."  JS 18
11  (citing AR 109).

12  The ALJ's hypothetical to the VE at AR 109 concerned Thompson's ability
13  to perform his past relevant work.  The ALJ, however, found that Thompson did
14  not have any past relevant work.  AR 32-33.  The ALJ proceeded to step five of
15  the sequential evaluation and did not rely on the VE's testimony.  Therefore,
16  Thompson's argument is moot.

17  **G.    Medical Vocational Guidelines**

18  At step five, the ALJ found that Thompson was capable of performing
19  unskilled light work and determined that jobs exist in significant numbers in the
20  national economy that Thompson can perform.  AR 33-34.  The ALJ did not,
21  however, identify specific jobs falling into that category.  *Id.*  Thompson argues
22  the ALJ therefore failed to properly develop the record.  JS 20.

23  At step five of the sequential analysis, the Commissioner bears the burden
24  of demonstrating that there is other work in significant numbers in the national
25  economy that the claimant can do.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114
26  (9th Cir. 2006).  If the Commissioner satisfies this burden, the claimant is not
27  disabled and not entitled to disability benefits.  If the Commissioner cannot meet
28  this burden, the claimant is "disabled" and entitled to disability benefits.  *Id.*

13

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.* "Where a claimant suffers only exertional limitations, the ALJ must consult the grids.  Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence.  Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Id.* at 1115 (citations omitted).

The ALJ determined that Thompson was capable of performing light,[8] unskilled work.  AR 23, 33.  "Unskilled work" is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).  In addition, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." SSR 85-15; AR 33.

The ALJ determined that Thompson was a "younger individual" when the application was filed, changed age category to "closely approaching advanced age" on January 30, 2006, had a high school education, and had no transferrable

---

[8] "Light work" is work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b); AR 23.

1  job skills.  AR 33.  A finding of "not disabled" would be directed under Rule
2  202.20 and Rule 202.13 if Thompson had the ability to perform the full range of
3  light work.  *Id.*  Finding that Thompson was able to perform unskilled light work
4  and "[a]dditional limitations have little or no effect on the occupational base of
5  unskilled light work," the ALJ determined that Thompson was not disabled.  AR
6  33-34.  The grid rules are premised on the availability of jobs at the unskilled
7  level.  20 C.F.R. § 404, Subpart P, App. 2, § 202.00(a)-(b).  Thompson has not
8  identified any error in the ALJ's analysis.

9                                    **IV.**

10                                   **ORDER**

11        IT IS HEREBY ORDERED that the decision of the Commissioner is
12  affirmed.

13        IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this
14  Order and the Judgment herein on all parties or their counsel.

17  DATED:  July 27, 2010
                                    _____
18                                  ALICIA G. ROSENBERG
                                    United States Magistrate Judge